IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SANTEE SIOUX NATION, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV147 |
| | ) | |
| v. | ) | |
| | ) | |
| GALE A. NORTON and UNITED | ) | MEMORANDUM AND ORDER |
| STATES DEPARTMENT OF | ) | |
| INTERIOR, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Santee Sioux (Tribe) filed a complaint in this action, Filing No. 1, requesting

declaratory and injunctive relief against the Department of Interior's (DOI) February 2,

2005, decision disapproving the Tribe's application for a Class III gaming application under

25 C.F.R. Part 291. 28 U.S.C. §§ 2201 and 2202. The Tribe contends that DOI violated

the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 *et seq.*, and acted in an

arbitrary and capricious manner that violated the Administrative Procedures Act (APA), 5

U.S.C. §§ 701 *et seq.*, when on February 2, 2005, the Secretary of the Department of

Interior (Secretary) determined that the Tribe's application for Class III gaming should be

denied. The State of Nebraska (State) moved to intervene in this case as a party

defendant and asserted a cross-claim challenging the validity of the Class III gaming

procedures in 25 C.F.R. Part 291 used by the DOI to make its final decision regarding the

application of the Tribe. In the alternative, the State also asks this court to grant its motion

for summary judgment supporting the decision on the merits by the DOI. Currently before

the court are motions for summary judgment filed by the State, Filing Nos. 26 and 38, by

the Tribe, Filing No. 29, and by the Secretary, Filing No. 41.

**Standard of Review**

A court may overturn agency action only if it finds the action is "arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A), Administrative Procedures Act. There is a presumption in favor of agency action, and the ultimate standard of review is very narrow. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). The court must give agency decisions a "high degree of deference." *Voyageurs National Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004) (citation omitted). The court must determine if the agency considered the relevant factors and whether there is clear error of judgment. *Id.* The court cannot substitute its own judgment over the agency judgment. *Id.* If there is a rational basis for the decision, the court must uphold the determination of the agency. *Id.* However, ambiguous statutes and provisions which have been passed for the benefit of Indians must be construed liberally in their favor. *Brian v. Itasca County*, 426 U.S. 373, 392 (1976).

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* The motions presented to the court in this case are primarily legal rather than factual in nature.

**Overview of Gaming**

Economic development, protection from organized crime, and the establishment of independent regulatory authority for gaming on Indian lands are goals of IGRA. 25 U.S.C.

2

§ 2702. Congress stated: "Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity." *Id.*

Congress enacted the IGRA in 1988 to regulate gambling activities on Indian lands. 25 U.S.C. § 2702.  IGRA divides gaming into three separate categories: Class I, Class II, and Class III.  Class I gaming activities are regulated solely by Indian tribes and are social games for minimal prizes.  25 U.S.C. § 2703(6) and § 2710(a)(1).  Class I gaming activities are not at issue in this action, and Class I games are not subject to state regulation.  25 U.S.C. § 2710(a).  Class II gaming is defined as "the game of chance commonly known as bingo (whether or not electronic, computer, or other technologic aids are used in connection therewith) . . . including (if played in the same location) pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo. . . ."  25 U.S.C. § 2703(7)(A). Class II games include card games explicitly authorized by state law or those not explicitly prohibited and are played in the state, if in conformity with the law.  25 U.S.C. § 2703(7)(A).  In addition, Class II gaming on Indian lands is subject only to regulation by a tribe with review by the National Indian Gaming Commission (NIGC).  States do not control Class II gaming on Indian lands.

Class III gaming consists of "all forms of gaming that are not Class I or Class II gaming."  25 U.S.C. § 2703(8).  Tribes have the right to conduct Class III gaming which the state permits for any purpose, by any person, organization or entity.  25 U.S.C. §§ 2701 and 2710.  Further, IGRA allows a tribe to operate Class III gaming if the state regulates, as opposed to prohibits, a particular gaming activity, or if there is no compact, the

Secretary of the Interior argues it can permit such operation.    25 U.S.C. § 2710(d)(7)(B)(vii); 25 C.F.R. Part 291.

The State is required to negotiate in good faith to enter into a compact with the Tribe.  25 U.S.C. § 2710(d)(3).  Such a compact would be approved by the Secretary.[1]  A tribe could then sue the state in federal court requesting that the state be ordered to negotiate in good faith.  25 U.S.C. § 2710(d)(7)(A)(I) and 2710(d)(B)(I).  If the court finds that a state failed to negotiate with a tribe in good faith, then the IGRA remedial process begins.  25 U.S.C. § 2710(d)(7)(B)(iii).  Upon a finding of lack of good faith, a court orders the state to conclude a compact within sixty days.  *Id.*  If that does not result in a compact, then a mediator is appointed.  The mediator must select the compact that best comports with the requirements of 25 U.S.C. § 2710(d)(7)(B)(iv).  If the state does not consent to this choice, the state must notify the Secretary.   However, as discussed later in this Memorandum and Order, if the state asserts its Eleventh Amendment immunity when sued by a tribe, the court must dismiss the lawsuit.  As further discussed hereinafter, the Secretary promulgated regulations that specifically deal with an instance where a state asserts its immunity.[2]  At the end of this process, the Secretary must approve or disallow the request for gaming by the tribe.  25 C.F.R. § 291.8.  The State contends that these regulations and procedures as set forth in 25 C.F.R. Part 291 violate IGRA, as they are not a permissible interpretation of IGRA.

In summary, there are two avenues for the Tribe to pursue a compact.  First, the Tribe can follow the statutory scheme up and until the State asserts Eleventh Amendment

---

[1]Both the government and the Tribe agree that no such compact exists, although the Tribe requested a compact.

[2]The State of Nebraska did assert immunity when sued by the Tribe in this case.

4

immunity.  Second, if the state refuses to consent to suit and asserts its immunity, the Tribe must follow the procedures outlined by the Secretary in 25 C.F.R. part 291, as discussed more fully hereinafter.

**Facts**

The Tribe is organized pursuant to the Indian Reorganization Act, 25 U.S. C § 476, and is located in Knox County, Nebraska, where it operates a restaurant and gaming facility upon which it relies for economic benefits for the members of its Tribe.  In March 1993, the Tribe asked the State to negotiate with it for a Class III gaming compact.  For four years the parties met, but they did not sign a compact.  The Tribe believes this failure constituted a lack of good faith.  On February 2, 1996, the Tribe sued the State and the Governor of Nebraska in federal court, alleging failure to negotiate in good faith.  *Santee Sioux Tribe v. State of Nebraska*, 96CV115 (D. Neb. 1996).  Subsequently, the Supreme Court decided that Congress cannot abrogate a state's Eleventh Amendment immunity from suit (unconsented) by tribes to compel good faith negotiations.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).  The court, however, did not decide what remedy, if any, was left for a Tribe when it believed a state did not negotiate in good faith.  The Nebraska federal court then dismissed the *Santee Sioux* case in view of the *Seminole Tribe* decision.  The Eighth Circuit affirmed.  *Santee Sioux Tribe of Nebraska v. State of Nebraska*, 121 F.3d 427 (8th Cir. 1997).

Thereafter, on May 30, 1996, the Tribe petitioned the Secretary of the Interior to promulgate Class III procedures that would allow the Tribe to have Class III gaming.  On April 12, 1999, the DOI issued regulations dealing with a situation where the state and a tribe cannot come to agreement on a compact and the state then asserts immunity to suit.

25 C.F.R. Part 291.  These regulations took effect on May 12, 1999.  These rules created a new remedy to deal with the *Seminole* decision.

The Tribe applied on May 12, 1999, for Class III gaming.  The Tribe asked for the following games:  dice games; telecommunication-related, player-activated electronic and electromechanical facsimiles of games of chance; wheel games, including roulette; parimutuel horse and dog racing betting including simulcasting; card games, banked and non-banked, including poker in its numerous forms and blackjack; lottery, including online lottery; and lotteries, including keno.

On June 10, 1999, the DOI indicated that the Tribe met the eligibility requirements for Class III gaming under 25 C.F.R. § 291.3.  In July the DOI asked the Governor and the Attorney General of Nebraska to comment on the Tribe's gaming proposal and to offer, if necessary, alternative options.  On September 9, 1999, the State told the DOI they did not agree with the proposal, and the State did not submit an alternative proposal.  The State indicated that the Tribe could not operate Class III gaming other than parimutuel wagering, licensed horse racing, lotteries, raffles, keno and pickle cards.  Filing No. 1, Ex G.  At an informal conference with the DOI, the State argued that the Tribe could only operate gaming authorized by the State, and the Tribe argued that it could conduct any gaming not prohibited by the State.  In particular, the Tribe argued that the State permits "games of chance" for business promotion purposes as a "gift enterprise," pursuant to Neb. Rev. Stat. § 9-701 and the Neb. Const. Art. III, § 24.  The Tribe's application with the DOI apparently lay dormant for the next two years. On June 10, 2002, the DOI preliminarily determined that the Tribe could operate certain gaming under IGRA.   Those games included parimutuel horse racing, keno, and lotteries.  The DOI determined that the "Gift Enterprise

Act" did involve gaming as argued by the Tribe.  The DOI also preliminarily determined that the State does not authorize certain electronic gaming devices under the Gift Enterprise Act, including player-activated video gambling devices, video, electronic or electromechanical facsimiles of keno, including telecommunication and Johnson Act devices.  Filing No. 1, Ex. I.

The DOI conducted a second informal conference on September 24, 2002, on the issue of whether the State allows "games of chance" under the Gift Enterprise Act.  Neb. Rev. Stat. § 9-701.  The Tribe presented evidence to support its contention that such games are authorized and exist in Nebraska.  On June 29, 2004, the DOI issued its final determination.  The DOI determined that the Nebraska's Gift Enterprise Act does involve gaming, but it determined that casino games are not permitted, and finding the State's restrictions are prohibitory in nature, not regulatory.  Filing No. 1, Ex. A. Accordingly, the DOI disapproved the Tribe's application for Class III gaming procedures.  Filing No. 1,  Ex. B at 3.

**Discussion**

*A.   Class III Gaming Procedures and Regulations*

The State contends that the Secretary's Class III gaming procedures, 25 C.F.R. Part 291 are invalid and unenforceable.  The Tribe disagrees and argues that these rules are valid and enforceable.  The Tribe contends that the *Chevron* two-part test is applicable. *Chevron U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837 (1984).  *Chevron* first directs the court to determine if Congress has spoken on the issue.  *Id.* at 843.  If the answer is in the affirmative, that ends the matter.  If the answer is no, the court must

address the second question, namely, whether the agency decision is based on a "permissible construction of the statute." *Id.* at 843.

The Tribe contends that Congress has explicitly spoken on this issue and has provided for a dispute resolution process. If that resolution is ineffective, the Tribe argues that Congress has permitted the Secretary to issue procedures and rules that permit the Tribe to operate Class III gaming even without a compact. 25 U.S.C. § § 2710(d)(7)(B)(v), (vi), (vii). However, if the court finds that Congress has not explicitly spoken on this issue, the Tribe urges that even under part two of the *Chevron* test, the court should find that the Secretary has used procedures that comply with IGRA.

Congress has set forth a process wherein the Department of Interior is charged with the responsibility of administering Indian affairs. 25 U.S.C. §§ 2, 9; 43 U.S.C. § 1457. Section 2 states: "The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations." Section 9 states: "The President may prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs, and for the settlement of the accounts of Indian affairs." Section 1457 states: "The Secretary of the Interior is charged with the supervision of public business relating to the following subjects and agencies: 10. Indians."

The passage of IGRA in 1988 gave the Secretary of the DOI management and oversight of gaming on Indian lands. 25 U.S.C. § 2701(3); 25 U.S.C. § 2702(2), 25 U.S.C. §§ 2704-2708. In response to the *Seminole* case, the Secretary promulgated regulations

at 25 C.F.R. Part 291.  The Rules establish the following new procedure for Tribes to

obtain approval to conduct Class III gaming:

A.  The Secretarial procedures apply when the State and the Tribe are unable to agree on a compact and where the State "has asserted its immunity from suit brought by an Indian tribe." Rules § 291.1.

B.  A Tribe can ask for Secretarial procedures when the Tribe and the State are unable to negotiate a compact, the Tribe brings a lawsuit against the State under the IGRA standard of failing to negotiate "in good faith," the State "raised an Eleventh Amendment defense to the tribal action," and the "Federal district court dismissed the action due to the State's sovereign immunity under the Eleventh Amendment." Rules § 291.3.

C.  Within 30 days of receiving a complete proposal, (the Secretary must) notify the Indian tribe in writing whether the Indian tribe meets the eligibility requirements in § 291.3.  Rules § 291.6.

D.  The Secretary will then submit the Class III gaming proposal to the particular State's Governor and Attorney General, and allow the State 60 days to comment on the Tribe's proposal and to submit an alternative proposal.  Rules § 291.7.

E.  If the State thereafter fails to submit its own proposal within another 60-day period, the Secretary must either approve the Tribe's proposal or identify objections to it under the § 291.8 standards. See Rules § 291.8.

F.  Alternatively, if the State does submit its own proposal, the Secretary must appoint a mediator, who then selects one of the two proposals as the "one that bests comports with the terms of IGRA and any other federal law," and submits it to the parties. Rules §§ 291.9 and 291.10.

G.  Within 60 days of receiving the mediator-selected proposal, the Secretary must either accept it or disapprove of it if it fails to meet the standards in § 291.11.  If rejected, the Secretary "must prescribe appropriate procedures within 60 days under which class III gaming may take place." Rules § 291.11.

H.  The Tribe then has 90 days to "approve and execute the Secretarial procedures" and the Secretary will publish notice of their approval in the Federal Register. "The procedures take effect upon their publication in the Federal Register." Rules § 291.13.

There is no doubt that the *Seminole* decision finding Eleventh Amendment state sovereign immunity for the states created a gap in IGRA. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44. The real question is whether the Secretary is empowered to fill in that gap. Where a gap in a statute exists because of an intervening case, the resolution by an agency will be sustained as long as it is supported under the statute. *See, e.g., Chevron,* 467 U.S. at 843*; Sidney Coal Co., Inc. v. Social Sec. Admin.*, 427 F.3d 336, 346 (6th Cir. 2005); *Pittson Co. v. United States*, 368 F.3d 385, 402 (4th Cir. 2004); *Texas v. United States*, 362 F. Supp. 2d 765, 771 (W.D. Tex. 2004) ("IGRA vests the Secretary with authority to promulgate procedures governing Class III gaming. . . . Although Congress did not expressly grant authority . . . it may be inferred from both the language in IGRA and the general-authority statutes." In *Chevron*, the court concluded that Congress intends for agencies to fill in the gap implicitly or explicitly left by Congress and to make rules and policies. *Chevron*, 467 U.S. at 843. If reasonable, such interpretation must be upheld. *Emerson v. Steffen*, 959 F.2d 119, 121 (8th Cir. 1992). All parties agree that Congress passed IGRA to improve the economic development of tribes. It appears that at least two courts have concluded that the Secretary had the authority to issue the regulations in question in this lawsuit under the language set forth in 25 U.S.C. § 2710(d)(7)(B)(vii) of the IGRA. *Seminole Tribe of Florida v. Florida*, 11 F.3d 1016, 1029 (11th Cir. 1994); *Texas v. United States*, 362 F. Supp. 2d 765, 771 (W.D. Tex. 2004). Also, the Ninth Circuit has stated: "[t]he Department of the Interior, for example, might promulgate regulations that take the place of the compact process." *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1302 (9th Cir. 1998). The Ninth Circuit also noted that "the Eleventh Circuit's

suggestion [to allow the DOI to promulgate rules] is a lot closer to Congress' intent" than allowing the tribes no recourse when Eleventh Immunity is asserted.  *Id.* at 1301.

The court finds that the procedures established by the Secretary are a reasonable interpretation of IGRA.  Congress has not spoken directly on this issue, i.e., what the remedy is for a tribe where the state asserts its Eleventh Amendment immunity.  However, under the second prong of *Chevron*, the court determines the agency's interpretation of IGRA is reasonable.  Congress intended that the Secretary review and approve Class III gaming by tribes.  This court agrees with the Eleventh and Ninth Circuits which have found that a tribe could request the Secretary determine gaming procedures pursuant to 25 U.S.C. § 2710(d)(7)(B)(vii). *Seminole Tribe*, 11 F.3d at 1029; *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1301-02 (9th Cir. 1998).  In addition, the general authority statues provide a basis for the action taken by the Secretary.  25 U.S.C.  §§ 2 and 9.  These sections allow the Secretary and the President  to "prescribe such regulations . . . of any act relating to Indian affairs."  25 U.S.C. § 9.  Congress has delegated express authority to the Secretary to develop regulations which support the goals of IGRA.  *See, e.g., Whitman v. American Trucking Assoc., Inc.*, 531 U.S. 457, 472 (2001); *see also, INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) (courts must accept interpretation of agency to which Congress has chosen to delegate responsibility for administering a program when filling in "gap" left by Congress); *United States v.  Mead Corp.*, 533 U.S. 218, 229 (2001) (administrative agencies have power to address ambiguities or fill in a space left in the law).  The court finds that the regulations developed after *Seminole Tribe* are reasonably related to and fulfill the purposes of IGRA.  The delegation is one of management by the Secretary, not one of legislation.  The court finds no violation of

delegation to the Secretary, nor does the court find any separation of powers infringement. Therefore, the court concludes that IGRA and the general authority statutes permit the Secretary to promulgate the gaming procedures as set forth in 25 C.F.R. Part 291.

### B.  Secretary's Determination on the Merits of the Tribe's Application

#### 1.  State Law

The current Nebraska Constitution prohibits the Nebraska Unicameral from authorizing "any game of chance or lottery or gift enterprise when the consideration for a chance to participate involves the payment of money for the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time." Neb. Const. Art. III, § 24(1).  The Nebraska Constitution, however,  permits the Legislature to authorize and regulate "a state lottery, . . . other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises."  Neb. Const. Art. III, § 24(2).

Pursuant to the authority granted in the Nebraska Constitution, the Legislature has passed legislation permitting certain Class III gambling under the civil statutes and exempting such gambling under the criminal statutes of Nebraska. Neb. Rev. Stat. §§  2-201 to 266 (parimutuel wagering on horse racing); 8-301-356 (pickle cards); 9-401-437, lottery and raffle; 9-501-9-513, Small Lottery and Raffle Act; 9-601-9-653, keno; 9-801-842, lottery.  Exemptions exist from the Nebraska criminal code for these games of chance. Neb. Rev. Stat. §§  9-701; 28-1113; 28-1101(1); and 28-1101(5); 28-1105(1)(b).  A Gift Enterprise under Nebraska law is defined as:

> Gift Enterprise shall mean a contest, game of chance, or game promotion which is conducted within the state or throughout the state and other states in connection with the sale of consumer or trade products or services solely as business promotions and in which the elements of chance and prize are present. Gift enterprise shall not include any scheme using the game of bingo or keno; any non-telecommunication-related, player-activated electronic or electromechanical facsimiles of any game of chance; or any slot machine of any kind. A gift enterprise shall not utilize pickle cards as defined. . . .

Neb. Rev. Stat. § 9-701.

### 2. Arguments by Parties

The Tribe alleges a substantial number of arguments regarding why it should be permitted to conduct Class III gaming in Nebraska. The court will try to summarize the essence of the Tribe's arguments. The Tribe asserts that it is permitted to participate in Class III gaming if the gaming is "located in a State that permits such gaming for **any** purpose by any person, organization or entity. . . ." 25 U.S.C. § 2710(d)(1)(B) (emphasis added). The Tribe contends that permitting gaming for any purpose is sufficient to allow gaming on Tribal land, relying on *Mashantucket Pequot Tribe v. Connecticut,* 913 F.2d 1024, 1030-31 (2nd Cir. 1990) (the *Mashantucket* court determined that if a state permits games of chance or Las Vegas nights by any organization, even if only for non-profits, this constitutes gaming and the Tribe would be permitted to do such gaming on its land.) *Id.* at 1029. Such gaming, said the *Mashantucket* court, is permitted in a state which regulates, as opposed to prohibits, gambling under criminal law or state public policy. *Id.*

The Tribe argues that the Nebraska Gift Enterprise Act permits "forms of gaming" and video facsimiles of the same, not just limited games. The Tribe further argues, without appropriate substantiation, that the State permits video gaming terminals pursuant to a State regulatory scheme. Because the Tribe believes these games are permitted, the

Tribe argues that it should not be subjected to the regulatory requirements that such games be connected with the sale of products or services.  Thus, the Secretary's decision, argues the Tribe, is contrary to the language which permits Tribal gaming if the state authorizes gambling "for any purpose, by any person, organization or entity."  25 U.S.C. § 2710(d)(1)(B).

The Tribe also contends that the State of Nebraska allows each type of gaming that it has requested.  Nebraska, according to the Tribe, permits poker, blackjack, craps, roulette and telecommunication-related player-activated electronic and electromechanical facsimile games of chance as "business promotions."  Neb. Rev. Stat. § 9-701. The Tribe also argues that the State permits charitable casino nights which include games of blackjack, roulette, poker and other games in the Class III category.  In that regard, the Tribe argues that Nebraska additionally permits online lottery and keno games.  The Tribe contends that the State has a public policy of allowing casino nights and Las Vegas nights.

The Tribe argues that the court should not adopt the State's argument that the Eighth Circuit has already ruled that these games are illegal under Nebraska law.  In *Santee Sioux*, the court determined that stand-alone, self-contained video poker, black jack and slot machines are illegal in Nebraska.  *United States v. Santee Sioux Tribe of Nebraska*, 135 F.3d 558, 560 (8th Cir. 1998).  The Tribe contends that unlike that case, it now asks for "telecommunication-related, player activated electronic and electromechanical facsimiles of games of chance."  Administrative Record (hereinafter "AR"), 8991; 11426. These games, urges the Tribe, were not decided in the original *Santee* case.

The Tribe contends that there are two approaches to determine whether a state prohibits gambling.  Under the first approach, the Tribe argues that the "for any purpose"

language applies to whether the State categorically regulates or prohibits Class III gambling. *Northern Arapaho Tribe v. Wyoming*, 389 F.3d 1308, 1311 (10th Cir. 2004). A second approach is whether the state prohibits a "specific" Class III game*. Rumsey Indian Rancheria of Wintun Indians v. Wilson,* 64 F.3d 1250, 1257-58 (9th Cir. 1994). The Tribe contends that under either approach the test should be whether gambling is prohibited, not whether gambling is permitted. The Tribe argues that because the games it requested are not prohibited but are regulated, it is entitled to conduct gaming even in a manner inconsistent with what the State would permit. *United States v. Sisseton-Wahpeton Sioux Tribe*, 897 F.2d 358, 365 (8th Cir. 1990).

The parties differ on the construction of the phrase "games of chance" as set forth in the Gift Enterprise Act. The Tribe contends that the activities permitted under § 9-701 contain the element of consideration. The Tribe argues that "business promotion" is not a distinct form of gambling, but instead, it is a purpose or reason for gambling. The statute, argues the Tribe, broadly authorizes games of chance.

Intervener State argues that the State does not allow any type of gambling with the exception of the following: parimutuel wagering on licensed horse racing; traditional keno; certain pickle cards; and lotteries using an instant win ticket or online ticket game. Accordingly, the State contends that if certain gambling is not permitted, then the Tribe is not allowed to have such gambling on the reservation. The State argues that only the categories it permits are subject to negotiation with the Tribe. *See Cheyenne River v. State of South Dakota*, 3 F.3d 273, 277 (8th Cir. 1993) (state only required to negotiate video keno and not traditional keno, as traditional keno not a form of keno allowed under state law).

15

The State also contends that it only has to negotiate those games that others in Nebraska are permitted to partake.  It further argues that Nebraska only permits a few very limited number of Class III games.  The State also asserts that the Gift Enterprise Act does not authorize the forms of Class III gaming requested by the Tribe.  The State contends that the business conducted under this Act is not gambling, as the element of consideration is missing.  The State agrees that both the elements of chance and prize are present, but the statute does not permit any consideration to be involved.   Neb. Rev. Stat. § 9-701(3)(e).  Further, the reference to games of chance in § 9-701(1)(a) does not permit the Tribe to conduct traditional non-electronic casino gambling, as the Nebraska Constitution prohibits games of chance.  Thus, argues the State, the statutory exception for gift enterprises does not encompass those games of chance that are prohibited by the Nebraska Constitution.  *See State ex rel Spire v. Strawberries, Inc.*, 473 N.W.2d 428 (Neb. 1991).

The DOI determined that activities authorized under the Gift Enterprise Act are gaming activities for the purposes of IGRA, because the elements of prize, chance and valuable consideration are present.  The DOI then agreed with the State that the State of Nebraska did not intend to allow games of chance and the use of gambling devices through the passage of the Gift Enterprise Act.   The DOI determined that the Gift Enterprise Act could not be used to obviate the words "game of chance" set forth in the Nebraska Constitution.  The DOI stated: "Therefore, the Gift Enterprise Act cannot be used to permit the Tribe to operate traditional casino games such as roulette, banked and non-banked card games, and dice games, including craps, without complying with the statutory requirements imposed by the Nebraska Legislature for the conduct of gift enterprises."

16

Filing No. 1, Ex. A, at 8.   Further, the DOI found that it did not believe the Nebraska Legislature intended the gift enterprise language to permit use of any electronic or electronic facsimiles of games of chance.  *Id.* at 9.  The DOI concluded that the Tribe could conduct games in connection with the sale of consumer or trade products or services, where one has a chance to win a prize, compared with a chance to play a separate game. The DOI also found that the video lotteries, particularly those that are player-activated gambling devices, are prohibited under Nebraska law.   *Id.* at 10;  Neb. Rev. Stat. §§ 9-803(4); 9-401; 9-411; 9-437; 9-501; 9-507; and 9-513.  As stated by the DOI, "We agree with the State that slot machines and electronic devices constitute impermissible games of chance."  *Id.* at 14; Neb. Const. Art III, § 24.  Pursuant to Nebraska statutory and constitutional law, the DOI determined that the Tribe could conduct instant win games and online lottery games; traditional keno; lotteries and raffles; small  lotteries and raffles;  and parimutuel wagering.  Filing No. 1, Ex. A at 14-17.

### 3.  Analysis

The court is aware of its limited review in this case.  A court may overturn agency action only if it finds the action is "arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. §  706(2)(A), Administrative Procedures Act. If the decision of the DOI is rational, it must be supported, and the court must give agency decisions a "high degree of deference."  *Voyageurs National Park Ass'n,* 381 F.3d at 763.

IGRA mandates that the court must determine if the State, as a matter of criminal law and public policy, prohibits the gaming in question or merely regulates it.  25 U.S.C. § 2701(5).  The Nebraska Constitution clearly prohibits Class III gaming, except for the areas

where it permits legislation as previously set forth herein.  The Eighth Circuit determined that a tribe may engage in gambling that is specifically permitted by state law.  *Cheyenne River Sioux Tribe,* 3 F.3d 273.  The court stated: "The 'such gaming' language of 25 U.S.C. § 2710(d)(1)(B) does not require the state to negotiate with respect to forms of gaming it does not presently permit."  *Id.* at 279.  The Eighth Circuit has adopted a game specific approach, rather than the categorical approach urged by the Tribe.  *Id.*  This court must follow the dictates of the Eighth Circuit.

### (a)  Games of Chance

The first issue before the court is whether the "game of chance" and "gift enterprise" language set forth in the Gift Enterprise Act permits the kinds of gambling requested by the Tribe in this case.  Class III gaming is the "most heavily regulated and most controversial form of gambling under IGRA" and includes forms of gaming that are not class I or II, such as slot machines, roulette, craps, and house-banked card games.  *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 715 (9th Cir. 2003).  The Nebraska Constitution, § 24, clearly prohibits games of chance.  There is no constitutional exception to this ban.[3]

The Nebraska Constitution prohibits games of chance, although the words "game of chance" exist in the Nebraska statute for business promotions in the form of a gift enterprise.  The question is whether games of chance are permitted and whether, if so, this a distinct form of gambling.  If this is pure regulation, Congress intended to permit this gaming activity, even though such activity might violate state law.  *Sisseton-Wahpeton*

---

[3]There are, however, constitutional exceptions which allow the Legislature to authorize lotteries, raffles and gift enterprises.

*Sioux Tribe*, 897 F.2d at 365; *Northern Arapaho Tribe*, 389 F.3d 1308 (state of Wyoming permitted games of chance for social purposes, and thus tribe's use of commercial purposes upheld); *Mashantucket Pequot Tribe*, 913 F.2d at 1030-31(Las Vegas Night gaming four times per year for charitable purposes is regulatory, not prohibitive, and thus tribe could operate Class III gaming). If games of chance are prohibited, however, then they are not permitted for anyone, including the Tribe.

The Legislature has passed the Gift Enterprise Act pursuant to its authority under the Nebraska Constitution. The court must initially determine whether this Act permits games of chance. First, the State argues that there is no consideration for the business promotions part of the Gift Enterprise Act, and therefore, it cannot constitute gaming. The court disagrees and for purposes of this analysis accepts the determination of the DOI and the argument of the Tribe that the purchase of the product is sufficient to constitute consideration. *See, e.g., State ex rel. Hunter v. Fox Beatrice Theatre Corp.*, 275 N.W. 605, 606 (Neb. 1937). Second, as stated above, if the State allows games of chance for any purpose, including the business promotions under the Gift Enterprise Act, then the Tribe would be entitled to have games of chance. However, this is not the case. The Tribe has not offered any evidence that the State permits the requested games of chance. The Tribe cites to a few newspaper articles which show sporadic casino nights and Las Vegas nights over a number of years. However, there is no evidence of any State sanctioned or permitted Class III games of chance in Nebraska. *See Cheyenne River Sioux Tribe*, 3 F.3d at 279. Third, if the court found that the "games of chance" language in the Gift Enterprise Act meant that Class III games coveted by the Tribe were permissible, then that provision of the Nebraska Constitution prohibiting games of chance would be rendered meaningless.

Such an interpretation would be clearly unconstitutional.  Fourth, the Eighth Circuit has already determined that some of these games are illegal under Nebraska law.  *Santee Sioux Tribe of Nebraska*, 135 F.3d at 563-64 (In reaching this conclusion, the Eighth Circuit specifically held that "[t]he Tribe's gaming activities violate the IGRA because they are being conducted in contravention of Nebraska law." *Id.* at 563-64. The court found it was "undisputed that the Tribe is operating video poker, blackjack, and slot machines in its gaming facility," and that "[t]hese forms of gambling are illegal in Nebraska." *Id.* at 564.)[4] For these reasons, the court concludes that the State of Nebraska does not permit and in fact prohibits games of chance such as traditional types of casino dice games, wheel games, craps, roulette, and card games such as poker and blackjack.  The court finds that games of chance are not part of the Gift Enterprise Act, and accordingly, the Tribe is not entitled to utilize games of chance.

### (b) Lottery/player-Activated Electronic Gambling Devices

The court first agrees with the DOI that the Gift Enterprises Act prohibition on "non-telecommunication-related" devices does not mean that "telecommunication-related" devices are permitted.  "Lottery is a game of chance in which the winner is determined by mere luck, not by skill, and contains elements of consideration, a prize, and chance."

---

[4]The Eighth Circuit also relied on the Nebraska Supreme Court's decision in State ex rel. Spire v. Strawberries, Inc., 473 N.W.2d 428 (Neb. 1991), holding that video poker, blackjack, and dice machines were "games of chance" prohibited by the Nebraska Constitution, and were illegal "gambling devices" under Neb. Rev. Stat. § 28-1101. *Santee Sioux Tribe of Nebraska*, 135 F.3d at 564. The Nebraska Supreme Court has recognized that other forms of gambling constitute "games of chance" prohibited by the State Constitution. *See Indoor Recreation Enterprises, Inc. v. Douglas,* 235 N.W.2d 398 (Neb. 1975) (card games, including poker); *Baedero v. Caldwell,* 56 N.W.2d 706 (Neb. 1953) (pinball machines which awarded free replays). In addition, video poker machines providing replay credits have been held to be prohibited "gambling devices." *State v. Two IGT Video Poker Games,* 465 N.W.2d 453, 459 (Neb. 1991); *State v. Dodge City,* 470 N.W.2d 795, 796-98 (Neb. 1991).

*Video Consultants v. Douglas*, 2367 N.W.2d 697 (Neb. 1985).  Nebraska law specifically states: "Lottery shall not include . . . any gambling scheme which uses any mechanical, computer, electronic, or video gaming device which has the capability of awarding something of value . . . or tickets or stubs redeemable for something of value. . . ."  Neb. Rev. Stat. § 9-411(2); § 9-415(2)(a); § 9-507(2); and § 9-607(2)(a).

The Tribe requests video lottery games which would include instant win games and online lottery games that are hooked up to a central computer with telecommunication connections.  The State argues that video lotteries are illegal, and that player-activated video gambling devices are prohibited under Nebraska law.  The court agrees that slot machines and electronic devices are games of chance, not authorized under the Nebraska Constitution.  The State permits instant-win and online ticket games.  The Act prohibits any video lottery game.  The Legislature has authorized and defined lotteries, and games of chance are not included in the various permissible lotteries.  The court agrees with the DOI findings "that no player-activated lotteries are permitted to any person for any purpose."  Filing No. 1, Ex. 1, at 14.  The court also agrees with the DOI that the use of computer, electronic and video devices may not be used in conjunction with the lottery, as this causes the game to become one of chance.  Accordingly, the court determines that the decision of the DOI is not arbitrary or capricious or contrary to law.

   *(c)  Keno*

Nebraska permits traditional keno. The State argues that the traditional keno authorized in Nebraska requires a paper ticket, a five-minute rule, and no player access or activation. The Tribe has requested a magnetically encoded plastic ticket known as a "smart card," a game with no five-minute rule, and a machine that checks results and

permits direct payouts to winners.  The Tribe is essentially asking for electronic keno. The

Eighth Circuit has spoken on this issue.  The Eighth Circuit has determined that electronic

keno and traditional keno are two distinct forms of gaming.  *Cheyenne River*, 3 F.3d at 279;

Neb. Rev. Stat. § 9-607(1)(c)(ii) (". . . except that no keno game shall permit or require

player access or activation of lottery equipment. . . .").  The analysis used in *Rumsey* is

helpful in this case.  The Ninth Circuit, citing the Eighth Circuit at length, stated:

> The fact that California allows games that share some characteristics with
> banked and percentage card gaming--in the form of (1) banked and
> percentage games other than card games and (2) nonbanked,
> nonpercentage card games is not evidence that the State permits the
> Proposed Gaming Activities. Nor is it significant that the state lottery, if not
> technically a slot machine, is functionally similar to one. In *Cheyenne River
> Sioux Tribe v. South Dakota*, 3 F.3d 273 (8th Cir.1993), a tribe sought to
> operate a traditional form of keno as well as casino-type gambling. When the
> State of South Dakota refused to negotiate, the tribe filed suit, arguing that
> the video keno and charity-run casino-type gaming were legal in the state.
> The Eighth Circuit rejected this argument. First, it found that the state
> permitted charities to operate bingo and raffles, but not casino-type
> gambling. Second, it held that the state:  need not negotiate traditional keno
> if only video keno is permitted in South Dakota. The "such gaming" language
> of 25 U.S.C. § 2710(d)(1)(B) does not require the state to negotiate with
> respect to forms of gaming it does not presently permit. Because video keno
> and traditional keno are not the same and video keno is the only form of
> keno allowed under state law, it would be illegal . . . for the tribe to offer
> traditional keno to its patrons.  *Id.* at 279. The court thus concluded that
> South Dakota had not failed to negotiate in good faith by refusing to
> negotiate over traditional keno and casino-type gaming. *Accord Coeur
> D'Alene Tribe v. Idaho*, 842 F. Supp. 1268, 1280 n.9 (D. Idaho 1994), aff'd,
> 51 F.3d 876 (9th Cir. 1995).  We agree with the approach taken by the
> Eighth Circuit. IGRA does not require a state to negotiate over one form of
> Class III gaming activity simply because it has legalized another, albeit
> similar form of gaming. Instead, the statute says only that, if a state allows
> a gaming activity "for any purpose by any person, organization, or entity,"
> then it also must allow Indian tribes to engage in that same activity. 25
> U.S.C. § 2710(d)(1)(B). In other words, a state need only allow Indian tribes
> to operate games that others can operate, but need not give tribes what
> others cannot have.

*Rumsey Indian Rancheria of Wintun Indians v. Wilson*, 64 F.3d 1250, 1257 (9th Cir. 1994).

Accordingly, the court finds the Tribes argument in this regard is without merit. The court determines that the findings of the DOI are not arbitrary or capricious or contrary to law.

THEREFORE, IT IS ORDERED:

1. The State's motion for summary judgment, Filing No. 26, is denied.

2. The State's motion for summary judgment, Filing No. 38, is granted.

3. The Tribe's motion for summary judgment, Filing No. 29, is denied.

4. The Department of Interior's motion for summary judgment, Filing No. 41, is granted.

5. This case is dismissed. A separate judgment shall be entered in accordance with this Memorandum and Order.

DATED this 26th day of September, 2006.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge